## In re CROSBY STORES, Inc.

### COHEN v. IRVING TRUST CO.

#### No. 394.

Circuit Court of Appeals, Second Circuit.
May 8, 1933.

Blumberg & Parker, of New York City (Samuel M. Chapin, of counsel, and Lucien Hilmer, both of New York City, on the brief), for appellant.

Arthur Leonard Ross, of New York City, for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The issue presented by this appeal concerns only the validity of the trustee's counterclaim against the appellant. If that be valid, the order appealed from is correct; if it be invalid, then it is conceded that the trustee should pay Cohen $14,624.30. The bankrupt occupied several stores under leases upon which rent was overdue at the date of the filing of the petition in bankruptcy. Claims for such rent have been allowed in the aggregate sum of $16,451.52, and given priority over the claims of general credi-

tors. The trustee's counterclaim asserts that Cohen is obligated under his contract of purchase to pay these rent claims.

If this proceeding be viewed formally, the order appealed from has not a leg to stand on. The order of sale, entered on December 7, 1931, provided that title should be closed as of November 27, 1931, the purchaser to take receipts and assume expenses of the business thereafter. The property was transferred and the specified purchase price was paid on December 17th under a stipulation for a subsequent settlement in accordance with the order of December 7th. Thereafter Cohen moved to compel the trustee to account for its operation of the stores between November 27th and the date of delivery of possession. Concededly the trustee had collected during this period nearly $15,000 for Cohen's account. Against this the trustee sought to set off the alleged obligation of Cohen to pay the back rent on the store leases. For this it should be able to point to some provision of the order of sale requiring the purchaser to pay it. But the only provision relating to rent is subdivision 6, which required "the purchaser to assume all the leases from the date of the election of the Trustee"; that is, from December 1st. This clause is unambiguous; it clearly required Cohen to pay all future rent but nothing else. The language of a judicial record may not be contradicted by extrinsic evidence that something different was intended; the principle of "integration" is especially applicable to judicial orders. See Wigmore, Evidence (2d Ed.) § 2450; United Brick & Tile Co. v. McKissick, 51 F.(2d) 67, 69 (C. C. A. 8); Blue Mountain Iron & Steel Co. v. Portner, 131 F. 57, 60 (C. C. A. 4); Garrett & Co., Inc., v. Sweet Valley Wine Co., 251 F. 371, 374 (D. C. N. D. Ohio). Obviously it would be intolerable to allow parties to assert rights in defiance of the language chosen by the court to fix their rights; that is the very purpose of the order. It is clear, therefore, that the original contract of sale embodied in the order of December 7, 1931, did not obligate the purchaser to pay the overdue rent. In the assignments executed to carry out the order, the purchaser's obligation was stated in terms identical with those of the order.

However, the principle of integration does not preclude proof of a subsequent supplemental agreement, nor the correction of an order which does not truly represent the contract of the parties. See Wigmore, Evidence (2d Ed.) §§ 2417, 2441. After the order of December 7th was entered, the trustee raised with Mr. Blumberg, who was Cohen's

attorney, the question of paying past-due rents. On Mr. Blumberg's refusal to accede to the contention that the contract of sale bound Cohen to pay them, the attorneys went before the referee in bankruptcy, who informed Mr. Blumberg that he understood the contract of sale to have included this term and unless the purchaser would go through with the sale on that basis, a resale would be ordered. An order to show cause for another sale was signed, and a notice of resale was published. Then Mr. Blumberg told the trustee that he had decided to go through with the sale, "taking his chances that he might get a favorable decision from the court thereafter that his client was not required to save the bankrupt estate harmless from these rent claims." This was reported to the referee; the new sale was then called off, and a notice to that effect was published. If these facts could be construed as an agreement by Cohen to pay the disputed rents in consideration of the trustee's refraining from reselling the property, there would be no legal difficulty in holding him to it. But no one suggests that it was more than an agreement to allow the dispute to be thereafter determined by the court. The trustee, we may assume, was willing to agree to this because it knew how the referee would decide, but the trustee as well as Cohen took a chance as to the correctness of the referee's construction of the order of December 7th. To make sure its position, the trustee should have obtained either an amendment of the order of sale to include the disputed item, or a supplemental agreement by Cohen to pay it. It did neither; it let the order stand in the belief that it could subsequently obtain a judicial interpretation thereof favorable to its contention. For reasons already stated, such an interpretation is impossible.

There are no terms of court in bankruptcy, and the order of December 7th was interlocutory. Hence it was within the power of the referee in bankruptcy to correct the order of sale at any time, if the facts warranted. In re Burr Mfg. & Supply Co., 217 F. 16 (C. C. A. 2); Hume v. Myers, 242 F. 827, 829 (C. C. A. 4). Formally the trustee did not apply for its correction, but on the hearing of Cohen's motion the referee seems to have considered the merits of the controversy as though such an application had been made. We shall therefore treat this amorphous record in the same way and shall decide the case as though the trustee had moved to reform the order of sale on the ground that it

did not truly represent the real contract of the parties. Only proof "of the clearest and most satisfactory character" will justify reformation of a contract. Wigmore, Evidence (2d Ed.) § 2498; Philippine Sugar, etc., Co. v. Government of Philippine Islands, 247 U. S. 385, 391, 38 S. Ct. 513, 62 L. Ed. 1177. The evidence does not meet this test. Cohen's original written bid read exactly as does the order with respect to the assumption of the leases. Blumberg on several occasions made it clear that Cohen was to take them over only in futuro. The only evidence looking the other way is the colloquy on December 3d where Blumberg answered that the estate would not have to bear the past-due rents because "we are going to take over the leases." The trustee's argument bears heavily on this, and the force of it must be admitted; but it is more than offset by what occurred on December 7th. Then the referee asked Blumberg expressly whether he was "going to assume all the leases and pay up the back rent," to which he replied, "We are going to assume the leases on and after November 27th." He had also said the same just before. After hearing these repeated assertions of Blumberg, the order of December 7th was signed providing expressly for assumption of the leases only from the date of the election of the trustee. The evidence is far from showing that this language was chosen by mutual mistake and failed to represent the real contract of the parties. Indeed, when the dispute as to rents first arose, shortly after the order was entered, neither the trustee nor the referee suggested a reformation of the order, the appropriate remedy for a mutual mistake of the character now claimed; what was threatened was a resale. During the bidding it is very likely that the trustee and creditors who favored the acceptance of Cohen's bid were misled into believing that the estate in bankruptcy would not have to pay past-due rents on the leases. Statements by Bachrach, who was supposed to be the principal behind the nominal purchaser, Cohen, were to the effect that the leases were originally issued to another corporation and had not been assigned to and assumed by the bankrupt. Such erroneous statements would, we may assume, have justified the rescission of the contract of sale, or the recovery of damages, if damage resulted; they do not prove an agreement by the purchaser to pay the past-due rent. The only support for such an agreement is Blumberg's statement on December 3d, and that, as already stated, is outweighed by the other evidence. Consequently, even if

we abandon the form of the proceeding and treat the case as though the trustee had moved to reform the order of sale, reformation was not justified.

Accordingly, the order appealed from must be, and is, reversed, with directions to grant the appellant's motion.