PER CURIAM:
In these consolidated cases, Francis X. McLaughlin appeals from several orders of the United States District Court for the District of Maryland. In No. 81-1906, the district court affirmed four rulings of the bankruptcy court denying various motions filed by McLaughlin in that court. In No. *802 81-1967, the district court granted the motion of two of the appellees for a protective order, refused to vacate its ruling, and subsequently dismissed McLaughlin’s complaint for lack of in personam jurisdiction. Finding no error in the proceedings below, we affirm in both cases.
I
Each of the congested matters in this appeal arises from the 1970 business failure of Winthrop Lawrence Corporation (WLC). At all relevant times, the principal actors in WLC’s affairs were Lammot duPont Copeland, Sr. (Copeland Senior), a substantial creditor of WLC and holder of its stock only as collateral for his loans to the corporation; Lammot duPont Copeland, Jr. (Copeland Junior), the principal moving force, and Chairman of the Board, of WLC; and Donald McPhail, originally the Receiver for, and later the Trustee of, the WLC estate.
On November 10,1970, WLC filed a petition for a Chapter XI arrangement with the United States Bankruptcy Court in Baltimore, Maryland. Receiver McPhail sought, on April 13, 1973, the bankruptcy court’s approval of a comprehensive settlement agreement (First Agreement) fixing various rights and liabilities among WLC, Copeland Senior, Union Bank of Switzerland and Super Stores, Inc. This agreement, inter aiia, permitted Copeland Senior to exercise his rights as pledgee over certain stock in Super Stores, Inc. and Transogram, Inc. that previously was held by him as collateral for his loans to WLC, in exchange for a waiver by Copeland Senior of his claims, then totalling approximately $4 million, against WLC. The bankruptcy court, after notice to affected creditors and a hearing, approved the First Agreement on May 3, 1973; at no time did Copeland Senior file a proof of claim against the WLC estate.
In March of 1976, McPhail once again applied to the bankruptcy court for approval of a settlement agreement (Second Agreement) affecting the WLC estate. The Second Agreement was between WLC and Copeland Junior, who had since filed his own Chapter XI petition. WLC filed a proof of claim against Copeland Junior in the latter’s bankruptcy proceedings; Copeland Junior responded by filing a civil counterclaim against WLC, alleging mismanagement of the corporation against WLC and several of its officers. The Second Agreement provided, as relevant here, that WLC would withdraw its proof of claim against Copeland Junior in exchange for a general release of Copeland Junior’s non-bankruptcy claim against WLC. After the required notice to WLC’s creditors and a hearing, the bankruptcy court approved the Second Agreement.
WLC was formally adjudged a bankrupt on March 26, 1976. Contemporaneously, McLaughlin, an attorney who had previously purchased the rights of a WLC creditor for nominal consideration, began, as assignee-creditor, the series of court-related activities that has culminated in this appeal. McLaughlin’s principal claim, which has remained unaltered throughout the proceedings, was that Copeland Senior and Junior, along with others, committed fiduciary fraud in connection with the affairs of WLC and embezzled millions of dollars from the corporation; specifically, McLaughlin has contended throughout that the Copelands intentionally manipulated Copeland Junior’s debts so that they were reflected in WLC’s accounts as corporate liabilities, thus “causing” WLC’s bankruptcy-
In addition to initiating several actions not at issue here, McLaughlin sought to investigate Copeland Senior’s role in the alleged corporate fraud. To this end, McLaughlin threatened Trustee McPhail with litigation unless McPhail filed with the bankruptcy court, which had retained jurisdiction over WLC’s affairs, an application for examination of Copeland Senior pursuant to Fed.R.Bankr.P. 205.[1] McPhail acced *803 ed to McLaughlin’s request and filed the application on January 24, 1980. At the hearing before the bankruptcy court on the application, McPhail retreated from his nominal position and represented to the court that “the information which we provided to the court in the application that Mr. McLaughlin provided to us” did not warrant examination or investigation of Copeland Senior. McLaughlin, who was the sole moving force in this Rule 205 application, had filed written materials in support of it and participated actively at the hearing. The bankruptcy judge, aware of McLaughlin’s numerous prior actions in the WLC matter, admonished McLaughlin at this hearing that his relentless pursuit of the Copelands bordered on abuse of process.
Nevertheless, McLaughlin later filed an identical Rule 205 application to examine Copeland Senior, which was supplemented by a discursive 176-page “Factual Submission” prepared by McLaughlin. McLaughlin also filed, pursuant to Rule 727(b), a motion to perpetuate the testimony of Copeland Senior pending appeal of the bankruptcy court’s action on McPhail’s Rule 205 application. McLaughlin’s final two motions to the bankruptcy court were filed purportedly under Rule 307, and requested the court to reconsider its 1973 and 1976 orders approving, respectively, the First and Second Agreements.
In late 1980, the bankruptcy court denied each of McLaughlin’s motions and, apparently considering his repeated filings now demonstrably abusive of process, assessed costs and attorneys fees against him. The district court affirmed the bankruptcy court’s four substantive rulings, but reversed its award of attorneys’ fees to the successful parties, finding that the bankruptcy court lacked authority to impose such fees.[2] The district court, however, agreed with the bankruptcy court’s characterization of McLaughlin’s conduct as “in bad faith, vexatious[ ] and ... oppressive”; accordingly, the district court exercised its authority to award costs and fees to the prevailing parties to compensate them for their efforts at the district court stage of the proceedings.
In a related suit initiated by McLaughlin in 1979 in the Circuit Court of Montgomery County, Maryland, McLaughlin alleged that WLC, Mrs. Lammot duPont Copeland, Sr. (Mrs. Copeland Senior), and Blaine T. Phillips, the Copelands’ personal lawyer, had engaged in a fraudulent conspiracy affecting the rights of WLC’s creditors. Mrs. Copeland Senior and Phillips, both citizens of Delaware, removed the case to federal court; McLaughlin moved, inter alia, to compel discovery and Phillips and Mrs. Copeland Senior filed a motion for a protective order prohibiting the taking of their depositions.
At issue in both motions was whether the court would permit McLaughlin to depose the defendants solely to explore the jurisdictional issue. Finding that McLaughlin had made an insufficient showing that the defendants fell within the reach of Maryland’s long-arm statute, Md.Cts. & Jud. Proc.Code Ann. § 6-103 (1980), and that McLaughlin’s documentation also failed to meet the threshold test under the “conspiracy theory” of jurisdiction, the court denied McLaughlin’s motion to compel and granted the defendant’s motion for a protective order. In a subsequent ruling, the district court refused to vacate its protective order, and on August 20, 1981, dismissed McLaughlin’s complaint against Mrs. Copeland Senior and Phillips for lack of in personam jurisdiction.[3]
*804 II
McLaughlin subsequently sought review of the final district court judgments, which were consolidated on appeal. We first address the district court's decision affirming four rulings of the bankruptcy court and, second, the district court’s dismissal of McLaughlin’s suit against Mrs. Copeland Senior and Mr. Phillips.
A

No. 81-1906

Rule 205 Application

Relying on the venerable authority of Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), McLaughlin first contends that the district court erred by refusing to remand this claim to the bankruptcy court with instructions to that court to “sift the circumstances” of the alleged fraud by granting McLaughlin’s Rule 205[4] application to examine Copeland Senior or, in the alternative, hold a hearing on that motion. We perceive no error in the district court’s decision.
First, as its language suggests, Rule 205 commits to the sound discretion of the bankruptcy court the decision whether to require examination of a party. See 12 Collier on Bankruptcy 1205.05 & n. 9 (14th ed. 1976). In this case, McLaughlin’s application to examine Copeland Senior was based on Copeland Senior’s role in the alleged fraud of WLC. In support of this claim, McLaughlin has proffered at numerous stages of this litigation his 176-page “Factual Submission as to Fraud by Lam-mot Copeland, Sr., et al., in the $48 Million Bankruptcy of the Winthrop Lawrence Corp.” Significant portions of this document, prepared by McLaughlin, do not meet the standards for admissibility prescribed in the Federal Rules of Evidence. Moreover, the Factual Submission and major segments thereof, have been carefully reviewed by at least three courts who have deemed it, at best, to contain “[o]nly a bald allegation of fraud.” Neither Pepper v. Litton, nor any other authority known to this court, imposes upon a bankruptcy court the obligation to “sift the circumstances” when, as here, the allegations of fraud are presented as in this case.
Nor are we persuaded that the bankruptcy court was required to hold a hearing before ruling on McLaughlin’s application. In essence, McLaughlin received a hearing on his claim that Copeland Senior defrauded WLC, and therefore should be examined, when the bankruptcy court considered and denied an earlier application to examine Copeland Senior, which was filed by the Trustee at McLaughlin’s behest. McLaughlin actively participated in that hearing, and was not entitled to another. Finally, the mere addition by McLaughlin of his Factual Submission[5] to the second Rule 205 application did not require the bankruptcy court to hold another hearing. The district court thus properly affirmed the bankruptcy court’s action.

Rule 727(b) Motion

McLaughlin’s second contention is that the district court improperly affirmed the bankruptcy court’s denial of his Rule 727(b)[6] motion to perpetuate the testimony *805 of 75-year-old Copeland Senior pending McLaughlin’s appeal of the adverse Rule 205 determination. Rule 727(b) permits the bankruptcy court to order the perpetuation of testimony pending appeal when such perpetuation “is proper to avoid a failure or delay of justice.” Here, the bankruptcy court determined that an order requiring the perpetuation of Copeland Senior’s testimony, rather than avoiding “a failure or delay of justice,” would result in undue hardship to Copeland Senior. It would indeed be paradoxical if the bankruptcy court, after having denied McLaughlin’s Rule 205 application to examine Copeland Senior, subsequently permitted McLaughlin to circumvent the court’s ruling by granting his Rule 727(b) motion to perpetuate the identical testimony pending appeal of the Rule 205 application. In view of the history of this litigation, and the meritless nature of McLaughlin’s Rule 205 application, the bankruptcy court did not abuse its discretion in denying McLaughlin’s Rule 727(b) motion, and the district court properly affirmed the bankruptcy court’s order.[7]

Rule 307 Motions

Finally, McLaughlin maintains that the district court erroneously affirmed two rulings of the bankruptcy court which denied McLaughlin’s applications, filed pursuant to Rule 307,[8] to vacate and set aside the bankruptcy court orders of 1973 and 1976 approving, respectively, the First and Second Agreements. These motions were merit-less, and thus were properly denied by the bankruptcy court.
Rule 307 permits a party in interest to move for reconsideration of an “order allowing or disallowing a claim against the estate.” The appellees contend that McLaughlin’s efforts to set aside the bankruptcy court’s approval of the First Agreement, which fixed significant rights between Copeland Senior and WLC, and the Second Agreement, which settled a dispute between Copeland Junior and WLC, must fail because neither of the Copelands ever filed a proof of claim against the WLC estate. Regardless of the technical applicability of Rule 307 in this context, the bankruptcy court, like any other tribunal, may reconsider its orders in appropriate cases. Central Illinois Co. v. Irving Trust Co. (In re Pottasch Bros.), 79 F.2d 613 (2d Cir.1935); In re Clark, 257 F.Supp. 761 (E.D.Va.1966). Whether the bankruptcy court chooses to do so, however, is a matter within its sound discretion. Collier on Bankruptcy H 2.12 & n. 13 (14th ed. 1974). Because the Factual Submission represented McLaughlin’s primary support for both motions to vacate and set aside the 1973 and *806 1976 orders approving the First and Second Agreements, and because those orders were entered, after notice to creditors and a hearing, several years prior to McLaughlin’s challenges,[9] the bankruptcy court did not abuse its discretion in denying McLaughlin’s motions. Finally, and contrary to McLaughlin’s argument, the bankruptcy court was not required to hold a hearing before deciding McLaughlin’s motions. Thus, the district court properly affirmed these rulings of the bankruptcy court.

Attorneys’ Fees

The district judge determined, as had the bankruptcy court, that McLaughlin’s motions had “no merit” and were “filed in bad faith, vexatiously and for oppressive reasons.” He accordingly awarded appellees McPhail and Copeland $2,500 each in attorneys’ fees to compensate them for their efforts at the district court level. The district court’s findings, which derive ample support from the record, justify the exercise of its inherent authority to assess attorneys’ fees against an inordinately contentious litigant. Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).[10]
B

No. 81-1967

In May of 1979, McLaughlin filed a related suit in the Circuit Court for Montgomery County, Maryland, alleging that WLC, Mrs. Copeland Senior and Blaine T. Phillips had engaged in a fraudulent conspiracy. Mrs. Copeland Senior and Phillips, Delaware residents, removed the case to federal court. McLaughlin then moved to compel testimony of Mrs. Copeland Senior and Phillips, who filed a cross-motion for a protective order. After a hearing, the district court granted the defendants’ motion, and denied McLaughlin’s motion. McLaughlin subsequently renewed his motion to compel, supplementing it with the Factual Submission; the Maryland district court treated McLaughlin’s motion as one for reconsideration and denied it. On August 20, 1981, the court granted the defendants’ motion to dismiss for lack of in personam jurisdiction.
McLaughlin does not contend on appeal that the district court, acting on the information before it, improperly dismissed his suit against Mrs. Copeland Senior and Phillips; rather, McLaughlin presses the more narrow claim that the district court should have permitted him to depose the defendants for the purpose of establishing in personam jurisdiction.
Maryland’s long arm statute, Md.Cts. & Jud.Proc.Code Ann. § 6-103 (1980), provides the first potential font of the Maryland court’s in personam jurisdiction over Mrs. Copeland Senior and Phillips. Against the defendants’ affidavits stating that they had not engaged in any of the acts enumerated in § 6-103, McLaughlin offered “nothing beyond his bare allegations” that the defendants had had significant contacts with the state of Maryland.
McLaughlin also asserted that he possessed “documentary evidence” of the defendants’ contacts with Maryland, but failed to produce it. On these facts, the district court did not abuse its discretion in concluding that, although limited depositions may be warranted to explore jurisdictional facts in some cases, see 4 J. Moore & J. Lucas, Moore’s Federal Practice 126.56[6] (2d ed. 1982); 4A J. Moore, J. Lucas & D. *807 Epstein, Moore’s Federal Practice U 30.53[5] (2d ed. 1982), this was not such a case.
The district court also properly denied McLaughlin’s motion to compel the testimony of Mrs. Copeland Senior and Phillips under the “conspiracy theory.” Courts that have approved the exercise of long-arm jurisdiction pursuant to the conspiracy theory typically require the plaintiff to make a threshold showing, inter alia, that a conspiracy existed and that the defendants participated therein. See, e.g., McLaughlin v. Copeland, 435 F.Supp. 513, 529-33 (D.Md.1977). After a careful review of the documents submitted by McLaughlin, the district court concluded that “they [did] not tend to prove that a conspiracy existed or that defendants conspired or participated in the concealment of a conspiracy.” Finding no prima facie showing of conspiracy by McLaughlin, the district court denied his motion to compel and granted defendants’ motion for a protective order. Once again, we conclude that the district court properly exercised its discretion in denying the discovery sought by McLaughlin. See Lehigh Valley Industries, Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir.1975). And it need hardly be added that the court’s refusal to vacate its order upon McLaughlin’s later motion, as supplemented by the Factual Submission, was equally appropriate.
Ill
For the foregoing reasons, the district court judgments are affirmed.
After a review of the record and briefs, and oral argument, we decline to assess attorneys’ fees against McLaughlin on appeal, and the appellees’ request therefor is denied.
AFFIRMED.

. All subsequent citations to “Rule” or “Rules,” unless otherwise designated, refer to the Federal Rules of Bankruptcy Procedure. Those Rules, which were promulgated under the now-repealed Bankruptcy Act, govern the present case because Congress has provided that the *803 Bankruptcy Act of 1978, 11 U.S.C. §§ 101 et seq. (1979), applies only to those cases filed after October 1, 1979 and that, in any event, the existing procedural rules, to the extent not inconsistent with the new statute, are to remain effective until repealed or superseded by new rules which, to date, have not been adopted.

. The portion of the district court’s decision reversing the bankruptcy court’s assessment of attorneys’ fees against McLaughlin was not cross-appealed and therefore is not at issue here.

. WLC had previously been dismissed as a party to McLaughlin’s suit on the ground that it was only a nominal party and was under the exclusive jurisdiction of the bankruptcy court. McLaughlin apparently does not challenge this result.

. Rule 205.
EXAMINATION
(a) Examination on Application. Upon application of any party in interest, the court may order the examination of any person. The application shall be in writing unless made during a hearing or examination or unless a local rule otherwise provides.

. The Factual Submission was offered by McLaughlin in support of his three remaining motions. Our discussion of its merit pertains equally to the issues raised by those motions but will not be repeated.

. Rule 727.
DEPOSITIONS BEFORE ADVERSARY PROCEEDINGS OR PENDING APPEAL
(b) Pending Appeal. If an appeal has been taken from a judgment of a [bankruptcy judge] or before the taking of an appeal if the time therefor has not expired, the [judge] who rendered the judgment may allow the taking of the depositions of witnesses to perpetuate their testimony for use in the event of further proceedings before the [judge], in such case the party who desires to perpetuate the testimony may make a motion before *805 the [judge] for leave to take the depositions, upon the same notice and service thereof as if the proceeding were pending before the [judge].... If the [judge] finds that the perpetuation of the testimony is proper to avoid a failure or delay of justice, he may make an order allowing the depositions to be taken and may make orders of the character provided for by Rules 734 and 735, and thereupon the depositions may be taken and used in the same manner and under the same conditions as are prescribed in these rules for depositions taken in proceedings pending before the [judge].

. Appellees argue that Rule 727(b) was inapplicable because that rule applies only in “adversary proceedings” which are defined as those proceedings begun by “filing a complaint” with the bankruptcy court. Fed.R.Bankr.P. 703. However, Rule 727(b) “is applicable both in adversary proceedings and in contested matters.” 13 Collier on Bankruptcy j[ 727.02[1] (14th ed. 1977). Rule 914 expressly permits a party desiring to perpetuate testimony “in a contested matter in a pending bankruptcy case” to avail himself of Rule 727. Whether a Rule 205 application may properly be designated a “contested matter” is not clear. Cf. Rule 220; 13 Collier on Bankruptcy at j] 914.03 (Rule 914 provides the procedure to be followed in any contested matter which may arise under Rule 220 dealing with examination of a bankrupt’s transactions with his attorney). The question is, in any event, irrelevant in view of our conclusion that the bankruptcy court did not abuse its discretion in denying McLaughlin’s motion.

. Rule 307.
RECONSIDERATION OF CLAIMS
A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. If the motion is granted, the court may after hearing on notice make such further order as may be appropriate.

. We do not address directly the potential untimeliness of McLaughlin’s motions under Rule 924 which adopts, in most cases, the time limits prescribed in Fed.R.Civ.P. 60 (Relief from Judgment or Order), or the appellees’ equitable defenses based on the time lag between entry of the order and McLaughlin’s motions.

. The Supreme Court held in Roadway that minimal due process must be accorded a litigant who is ultimately required to pay the attorneys’ fees of his opponent. 447 U.S. at 767 & n. 14, 101 S.Ct. at 2464 & n. 14. Adequate due process safeguards were accorded McLaughlin in this case because he clearly was on notice that his behavior “verge[d] on abuse of process,” and had occasion to demonstrate the merit and good faith underpinnings of his numerous motions when he appeared before the district court seeking to overturn the bankruptcy court’s decision to assess fees and costs against him.